Good morning, Your Honor. Myron Moskovitz for the plaintiff and appellant Robert White. Mr. White is a bankruptcy lawyer in a small firm and he found that it would be helpful in his business to be able to accept credit cards, and rather than signing up for one of the big companies, he decided to use Square. Square provides credit card services for small businesses. So Mr. White goes to Square's website, he's told to look at the terms and conditions, and the terms and conditions say, we do not deal with bankruptcy lawyers. Now, California's Unruh Civil Rights Act has been interpreted by the California Supreme Court to ban occupational discrimination, and that's exactly what this is. So he brings a class action in Northern District on behalf of all bankruptcy lawyers saying, you can't do this. It's clear. The question is, in cyberspace, what constitutes making enough of an effort to use the services in order to experience the discrimination? And although both sides cited a lot of cases, I didn't see anything explaining what would give them standing for this cyberspace service. Yeah. Well, Your Honor, the California cases do spell out what you need. It's granted it's not terribly specific. The plaintiff under the Unruh Act has to have a special interest that is greater than the interest in the public at large, and that is concrete and actual rather than conjectural or hypothetical. Why doesn't he have to try to sign up for the services or sign up for the services? Why is it enough just to read the terms and conditions? There's a number of cases indicating in cases of higher price discrimination between men and women that you have to actually pay the fee, the discriminatory fee, before you have standing to sue. That's right. They do. This is not a price discrimination case. This has nothing to do with the price. They simply, we don't care what price you pay. You can't join our service because you're a bankruptcy attorney. So those cases involving price discrimination really don't apply. One of the strange things about this case is the district court held, as Your Honor is suggesting, that Mr. White didn't have standing because he did not tender a purchase price. Well, there is no purchase price. Square does not provide for a purchase price. They make their money on the other end. After the customer presents the credit card, Square gets a cut. But to sign up for their service, unlike these dating services and these other cases, you don't pay any money. There's nothing on the website that requires or even permits you to pay any money. You have to accept the terms and conditions. The terms and conditions are about paying money later. They send you a bill at the end of the month after you've used their services. So at the point where Mr. White wants to sign up, there's no money changing hands. He can't provide a purchase price. But he hasn't walked through the door. I guess that's the argument of the other side. He hasn't walked through the door in cyberspace. So, for example, in Raycraft, where they said you can't just know about the discriminatory swimming pool, you have to actually be a registered guest of the motel or mobile home park. Square has placed a big barrier on that door that you're talking about. The barrier is their provision on their website, which their language, Square's language, by creating a Square account, in other words, by clicking continue, you accept the terms and conditions. You confirm you will not accept payments in connection with the following businesses or business activities, 28 bankruptcy attorneys. Now, that's exactly what Mr. White does. So if he was to click continue, he would be lying to Square. Well, he could use the service, just not in his business. That's the argument they make. What's the point? I mean, the whole point of him signing up is to use it in his business. Now, Square, there was a motion for new trial here attaching a letter from Square's counsel in response to Mr. White's counsel saying if he were to sign up, we would consider this a fraudulent representation. And they'd be right. He would be lying. And just not only would this be unethical to lie to a company like this, but he would be subject to discipline by the California State Bar, possible prosecution for wire fraud. But that's not important. The important thing is he's a lawyer. He doesn't want to lie to a company to sign up for services and then try to deceive them. And that's what they're saying you have to do in order to go through the door. Now, why should anybody have to do that? Is this something that we should certify to the California Supreme Court since there aren't any cyberspace exclusion cases that we're aware of? It's an excellent question. I thought about that. There are two cases cited in the record. The Surrey case, which the trial court relied on, which purported to adopt a bright-line rule in price discrimination cases. You've got to tender the price. Well, this isn't a price discrimination case. But anyway, they set a bright-line rule, and that's what the district court relied on. The subsequent case, the Osborne case, which was a price discrimination case, said, we agree with Surrey. But then their reasoning went on to indicate, I think... That they disagreed with it. They did not agree with it. Wasn't it really more of an exclusion case because the $300 non-refundable fee if you bring in a service dog was clearly intended just to exclude people who have service dogs? I mean, I read that as more of an exclusion-type case. I guess that's one way to look at it. No, I kind of took them at their word. If he paid the fee, they would have allowed the dog. You may be right, though. I don't know. But in any event, yes, I think there is a conflict in those cases. I think at some point the California Supreme Court will have to resolve that conflict. Whether this is the case to have that done, I'll leave to you. I just wonder... If the California Supreme Court ends up holding Surrey is right, there's a bright line rule in all price discrimination cases, what's that got to do with this case? I mean, this was not a price discrimination case. There was no price to tender. So I'm not sure getting an opinion back from the Supreme Court would be that helpful. So what California case should we follow? Well, okay, that's a good question. I think what's mostly on point is actually some dicta from the Angelucci case from California Supreme Court where the court said clearly a black person would have standing if they went to get a drink from a water fountain that said whites only. Now, and then they turn away. They don't drink at the fountain. All right? There's no price to pay, right? They're not allowed to... I mean, I suppose the black person could take a drink and then face prosecution and then defend claiming the Unruh Act, but the court very reasonably said, no, you don't have to do that. Is it Mr. White's occupation, that of an attorney admitted to practice law in the state of California? Yes. And the restriction is that he can't use the service in connection with bankruptcy activities among all of the activities he's licensed to perform in the state of California. That's right. That's right. So is it the occupation or how he uses the occupation that's being restricted? Well, White has answered that question for us. They said bankruptcy attorneys. You can't use it in connection with the following businesses or business activities. Bankruptcy attorneys. So if you're a bankruptcy attorney, I don't... I'm not sure if Square would interpret this to allow a bankruptcy attorney who just happens to get a divorce case or something to use it for that. I don't know. Isn't that why he should apply? And if he has a controversy, find out? He has no intention of doing that. All he does is bankruptcy law representing creditors. That's all he wants it for. And it's very useful for someone like that. You know, he's got a small two-man practice and occasionally clients come in and they want to use the credit card. And he doesn't want to sign up with MasterCard or Visa. Just use Square. Just run it through a machine. It's easy. You've probably seen them at farmers markets. You know, it's for little guys. He's a little guy. No. Can't use it. I mean, it's... I hate to use the word open and shut, but it's open and shut on the merits. I mean, as a matter of fact, the reason this case is so important is if he doesn't have a standing, then nobody can challenge this. I mean, nobody can do more than he did. And this is going to stay there forever. Well, that's only because if he accepts the terms and conditions, he's agreeing to arbitrate for that other case. I mean, if absent the arbitration provision, somebody who actually signs up could then bring in this action. But he'd have to lie to get to that point. He'd have to confirm, I'm not going to use this for bankruptcy services to get to that point of arbitration. He doesn't want to do that. Could you raise a nonreclaim in arbitration? I suppose he could. But why should anybody have to do that? Why should anybody have to lie in order to assert your rights? I mean, suppose this didn't say bankruptcy attorneys. It said you're not Jewish. You have to confirm, or you're not black, or you're not a woman, or you're not gay. They could add that to the list, and the reasoning would be identical. Nothing would change. You'd have to lie about whether you're Jewish, whether you're Hispanic, whether you're black in order to get to that point. Isn't it really a question of where you want to contest the unreclaim? He wants to contest the unreclaim in district court, and that's why he didn't sign up, or he could just as easily have signed up and contested the unreclaim in arbitration. After lying, yeah, he could have done that. And in the arbitration, of course, his credibility would be at issue because he lied. Why is he lying? He wants to continue, and he wants to continue with the practice that's consistent with California law. And to the extent that there's a restriction on let's continue, that's a violation of the law. Wouldn't it be void? Look, why should you have to lie in order to assert your rights? There's no guarantee, perfect guarantee you would win an arbitration action anyway. There is a defense to the occupational exclusion if they can show a reasonable business purpose. I don't think they can. But why should he take that chance and lie? They wrote a very stern letter to Mr. White's trial counsel. If he signs up and he uses this for bankruptcy services, he's guilty of fraudulent representation. What does they have against bankruptcy lawyers? And what's the deal with bankruptcy lawyers? Good question. It actually says bankruptcy lawyers or collection agencies engaged in the collection of debt. What's so harmful about using the service in those business activities? I mean, what is their concern about using their service by a bankruptcy lawyer? If you want me to speculate. Well, I don't want you to. I'm just curious. I'm just curious if they related it. You can ask that. Here's my guess. Square depends on their relationships with the big credit card companies. All right? Who are the enemies of the big credit card companies? Debtors who don't pay their debts and people that help them in bankruptcy. So I suspect that for Square to accommodate and get along with the big boys, they're putting this in. That's my suspicion. Could a bankruptcy lawyer in a collection action represent the debtor, Bill, and collect his fee through T-Square? I'm sorry, Your Honor. His fee from the debtor client that he's representing in a collection action. Sure. Yeah. Mr. Massa, I let you go over. I sort of wasn't paying attention. I'm sorry. I was engaged in this, and I overlooked the time. But you're over your time. Yeah. So I'll give you a minute for rebuttal. Thank you. I appreciate it. Good morning, Your Honors. My name is Colleen Bell, and I'm representing the defendant at Police Square. This is what the appellant alleges in this case. He alleges that he went online to Square's website, that he read the standard terms that everyone who creates an account is required to abide by, and that he made the conscious decision not to sign up, not to create an account, because he would not he believed the terms were discriminatory, and he did not want to subject himself to those terms. So if in cyberspace I go to a website and it says, click here, but not if you're a woman, do I have standing to sue, or do I click and go through? So this is an interesting question. It's a harder question, but it's not this case, because this case doesn't say you have to affirm that you're not a bankruptcy attorney. This case, the terms, and I heard my colleagues say, we won't deal with bankruptcy lawyers. You have to lie. You can't come on if you're a bankruptcy attorney. Those things are false, because that's not what the terms of use require. They require that they restrict certain types of transactions. And so what they do is they say high-risk credit transactions you can't engage in. And so to answer your question, Your Honor, the crux of the UNRWA Act law says you have to personally experience the discrimination. You can't simply avoid it like appellant did. He said, I don't want to be. It also says you're entitled to full and equal access. Well, yeah, on the merit. So let's think about that as well. So he, in order to have UNRWA Act standing, you have to personally experience the discrimination. But he comes to the door. Because you haven't disagreed with me that if I come to a website which says women not allowed, I've come to the door. So he's come to the door, and then he sees a sign that says we don't give full and equal access to bankruptcy attorneys. Why doesn't that fit within the UNRWA Act? Okay. Because for the standing question is he has to have abided by the standard conditions of entry and then have suffered discrimination. So the woman who comes to the door, and they say, you can't come in, you're a woman. At that point, she has suffered the discrimination because she is not permitted to come in. He is not refused admission. He's permitted to come in. He says, I want to use this for my bankruptcy practice. And it says, no, you could come in, but not for bankruptcy practice. Other people can use it for whatever they want, but you can't use it for bankruptcy practice. Well, regardless of his occupation, he, like everyone else, has to abide by the restrictions in the ‑‑ on the service. And so he can, like everyone else, he can sign up. Like everyone else, he can use it for those things that are not restricted. And the fact that he engages in certain activities for which the service cannot be used does not affect his ability to sign up and use it for other activities. And I heard my colleague say that he only engages in bankruptcy law, which is not what the record shows. The record shows that bankruptcy law is part of his practice. So he can sign up, and like everyone else, he can create an account. Once he has created an account and he is subject to the restrictions of use, he then can say, I have standing. Because I am subject to the terms, I am now restricted. I am experiencing the alleged discrimination. But by simply saying, I'm aware of the terms, I refuse to be subject to them, I walk away, that's exactly the Surrey case. That is a case where he is opting out. He is avoiding the alleged discrimination. The Surrey was price differential, correct? Correct. That was the matchmaking service, and the discriminatory act there was paying a different price. Yes. So opposing counsel says this isn't a price discrimination case, which is correct, right? That's correct, but the case is still directly on point, because in each case, the plaintiff comes to the website. Isn't the discriminatory act here that you can't use it for your occupation? You cannot use this service for your occupation of bankruptcy attorney, which would be the occupational discrimination. That's the discriminatory act. Why does he have to say, okay, well, I can click, but I can't use it for my occupation? Why is that necessary in this case? Well, it's exactly analogous to Surrey. And so I know Surrey is a price discrimination case. No, it's not exactly analogous. Okay. So it's as analogous as it could be.  And in order to the standard conditions are for you to enter, you have to pay what you claim is a discriminatory price for you to enter. You can enter, too, regardless of your occupation. But you have to agree that you will abide by our conditions, our terms. And once you pay the discriminatory price in Surrey, you have standing. So the discriminatory price, the court says, that was the discriminatory conduct that he was subject to, paying the discriminatory price. Right. So what's the discriminatory action here? It is being subject to the terms that restrict your use of the claims. But it's the terms that are discriminatory. It's being subject to the terms. When I am ‑‑ it is not enough to be under California law. It is not enough to be aware of an alleged discrimination. You have to have suffered the alleged discrimination. So how ‑‑ so in Osborne, then, you disagree with the Court's outcome there. I don't. Because there the person didn't pay the $300 fee. I don't disagree with Osborne. I mean, Osborne, in fact, agrees with Surrey. Osborne says, we look at Surrey and we agree that guy did not personally experience a discrimination. But the Court said the person could ‑‑ did have standing even though the person didn't pay the discriminatory fee. That's true. And I think that's for a couple of important reasons. One is that's a disability case. And in fact, it limits its holding to the disability context. And in a disability case, what it says is for ‑‑ we have to look at the ADA. Because it recognizes that a violation of the ADA is per se a violation of the UNRRA Act. And it says the ADA has special rules for disabled with service animals. And it says in that situation where we're looking at the ADA, we look at the ADA, the ADA says that even asking a disabled person to pay a surcharge for their service animal is a violation. So at the point the Osborne plaintiff is refused service for ‑‑ refused the hotel room because he has a service dog and won't pay the fee, at that point, he suffers discrimination. In each of these cases, you have to look at, has the plaintiff suffered discrimination? And if they have ‑‑ So that was a discriminatory conduct in the Osborne? It wasn't paying the fee. It was being told that there was a fee. It was being told that you ‑‑ it was even asking, under the ADA, even asking a disabled person to pay a fee. Because the case didn't turn on that. It didn't ‑‑ It talks about that. It talks about ‑‑ it goes ‑‑ it talks about the ADA and that point. And then I think the other thing about Osborne that's different than the difference what we have is that he's actually ‑‑ he goes to the hotel. He suffers humiliation. He is refused the room. He has his family there. He's a disabled person who has to physically be there. Now, they don't go through and say exactly what their thinking is on all of those factors. They do point out the disability issue. They do limit the holding the disability. And the important thing for us here is they say, I look at Suri. Suri doesn't have standing because Suri went to the website, saw the terms, walked away. That's exactly what our person did. He went to the website. He saw the terms. He walked away. Now, you heard over and over again, he'd have to lie. He'd have to lie. That's what appellant's argument is the crux of. He'd have to lie to sign up. He does not have to lie to sign up. He can come on in. He can walk through the door. He simply ‑‑ He just doesn't get the full benefit of the services. Just like everybody else. There are lots of restrictions on the service because of economic concerns. But if he engages in a particular transaction, he can't use the service. He can't use the service for certain types of transactions. And that's because he's a professional bankruptcy lawyer. Well, he can use it for his employment law practice. Aging in this particular service, it's banned. He can use it for his employment law practice. He can use it for his real estate practice. He can use it for ‑‑ Right. But the important point ‑‑ So what if he was only a ‑‑ what if that's all he did? His only occupation was ‑‑ Even if that ‑‑ Is that a different case? Even if that was all he did, he could still sign up. Again, we're talking about statutory standing. But he couldn't use it. He could sign up, but he couldn't use it because of his occupation. He could sign up for the purpose of challenging the terms that he claims are discriminatory. He would be in arbitration. He would be in arbitration. And he doesn't want to be in arbitration. And this case is ‑‑ this exact case is being another case by his friend is in arbitration now. And that's really what we're talking about. He doesn't want to be in arbitration. But there's no lying to sign up. He can sign up. And when he signs up and he's subject to the terms, then he has standing. He has statutory standing because he is subject to the restrictions. And that is the point. He needs to be subject to the restrictions. Is this something we should certify to the California Supreme Court? But there's not any case that explains to us in cyberspace what constitutes, what would be standing, what would be the discriminatory conduct. I don't think you need to certify it because you have Surrey that tells us what the California appeals court. And you have the only ‑‑ the other case that talks about Surrey, Osborne, which he wants to rely on, is also saying, I agree with Osborne. There may be hard facts in other cases. There aren't hard facts here. This guy came, read the terms, opted out. He avoided the alleged discriminatory ‑‑ the alleged discrimination. He avoided it. He doesn't have statutory standing just to be aware of alleged discrimination. You have to actually personally suffer it. He has to have been a member to be subject to the terms. When he's subject to the terms, then he can say, I'm restricted. I suffer restriction. But mere knowledge of terms, as Surrey says, you can't go to the website and turn around once you see terms you don't like. So in cyberspace, pretty much anything goes? I don't think it's anything goes. I think these law ‑‑ actually, the unrack cases, I think, are all consistent in this point. All of the cases dating back to Orloff in the predecessor statute, they say suffer the discrimination. If this situation occurs in maybe another circumstance, I can't think of one, you know, offhand, but everybody uses the Internet now to sign up for things. That's true. And what you're saying is you've got to click yes or whatever. You've got to opt in. Again, I ‑‑ And you can't raise, no matter what the discrimination is, and you can't raise an unrack claim unless you sign up. And that can't be what the law ‑‑ that can't be what the California law is. It's not no matter what the discrimination is. Again, you have to look at the alleged discrimination where your Honor said if it says you have to sign up, if it says you're ‑‑ if I'm a woman and I have to sign up. Let me ask you this. What if Square had an office down the block? It does. And he went down to the office. Okay. He goes down to the office and he says, you know, tell me about your service. I'd like to sign up for it. You know, I'm interested. I'm a small guy. I just have this little business here. And they say, okay, here's our business. But you're a lawyer, but you, if you engage in bankruptcy practice, you can't really use our service. So what does he ‑‑ can he then sue? No. No. It's the same thing. Why? I mean, he's right there. He's encountered it. They've said, no, you can't. You can't use our service for what you want to do. They have said ‑‑ If they wouldn't sign him up, he could sue, correct? Yeah, yeah, yeah. If they wouldn't sign him up, if they said you're a woman or you're ‑‑ if you're a woman, you can't sign up. If you're, you know, something else, you can't sign up. Then he's suffered the discrimination. What is the point at which he's suffered the discrimination? If you're a woman, we're refusing you, you've suffered discrimination. Here, we're saying, sure, come on in. Sign up. Use our service. He's saying, oh, I don't want to use it. Never mind. I'm leaving. He backs out. He goes. No statutory ‑‑  Judges cannot drink, cannot buy an alcoholic beverage here because we think judges should be sober. Do I have to buy a Coke in order to sue them for that? Well, let me say this. If you say, hi, I'm a judge, I'd like a gin and tonic, and they pour you a gin and tonic and they hand it to you, you're not discriminated against. You haven't personally suffered discrimination, notwithstanding whatever the sign said, and so you do not have statutory standing. So I would have to order a drink and be refused, you're saying? Yes. So just seeing a sign that says judges are not authorized to buy drinks, we refuse judges' services here is not enough? I think that would not be sufficient because you would not have personally suffered the discrimination. You have to look at the point. What is the discrimination? Have you personally suffered it? And so this, again, this person, he's saying, I can't sign. The reason he's saying to you, I would have to lie, I can't sign up, is because he knows it's true. But that's not true. He doesn't have to lie. He can sign up. He can use it. He just can't use it for everything. So he has statutory standing. All right. Only if he signs up. As I did with Mr. Moskowitz, I'll let you go over time by four minutes, so four and a half to be exact. Thank you, Your Honors. Okay. Thank you very much. Mr. Moskowitz, I said I'd give you a minute for rebuttal. I was thinking about your question about referring to the Supreme Court. What's unusual about this case is it's an Internet case. My research shows only one Internet case in the California courts, and that's the Osborne case. The rest are bricks and mortar. So that does raise some interesting issues. I think the closest analogy to a bricks-and-mortar situation is pre-Internet. I don't know. Square is offering similar services in a store, and there's a big sign on the window. Come on in and sign up for Square. No bankruptcy attorneys. All right. Now, if Mr. White goes to that store, what's he supposed to do? Go in anyway and force himself on there? Try to pass some money to them? I mean, it's ridiculous. I mean, the closest analogy, in fact, is no blacks, because that's what they used to say. And the Supreme Court has made it absolutely clear in Angelouki and other cases that you have standing in that situation. If you want to use the service and can show that, Mr. White, show that, that's enough. Now, I just want to mention one thing. Your client signing up for Square's service with the intent to violate the applicable terms of service would be fraudulent. That's from them. That's from Square's attorneys. Okay. Thank you, Mr. Mossberg. Thank you. Thank you, counsel. We appreciate your arguments today. Interesting case. The matter is submitted at this time.
judges: Paez, Ikuta, Vitaliano